UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:03-cv-489-J-32HTS

ANN W. TILLER, as Personal
Representative of the Estate of
CLARK E. TILLER, deceased,

    Plaintiff,

vs.

FORD MOTOR COMPANY, a foreign
corporation,

    Defendant.
_____/

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO EXCLUDE AND/OR LIMIT THE TESTIMONY OF
PLAINTIFF'S EXPERT ALLAN J. KAM AND
<u>REQUEST FOR DAUBERT HEARING</u>**

**I. <u>STATEMENT OF THE CASE</u>**

This is a product liability action that arises out of an automobile accident that occurred on May 30, 2001, in the southbound lanes of Interstate 95 near Ridgeland, South Carolina. At that time a 1995 Lincoln Town Car driven by Clark Tiller, and containing Mr. Taylor's wife, Ann Tiller, as a passenger, was rear-ended by a semi tractor-trailer truck driven by Hilbert Darcy Bihn. The impact caused the Town Car to leave the roadway and overturn. As a result of the accident, Mr. Tiller was killed. This action seeks damages under Florida's wrongful death statute against Ford Motor Company.

## II. INTRODUCTION AND FACTUAL BACKGROUND

A.  NHTSA.

Since its inception in 1965, the National Highway Traffic Safety Administration ("NHTSA") has been charged by Congress to ensure that the motoring public is protected against unreasonable risk of motor vehicle accidents and from an unreasonable risk of death or injury in motor vehicle accidents. 49 U.S.C. Chapter 301 et seq. As part of this mandate, NHTSA has the authority to implement mandatory standards applicable for vehicles to be sold in the U.S. These standards are known as Federal Motor Vehicle Safety Standards ("FMVSS"). NHTSA's rulemaking process is set forth in the Code of Federal Regulations. It is an open process in which anyone – any company, any person – can petition NHTSA to promulgate an FMVSS on any subject, or whereby NHTSA can initiate the process on its own initiative.

For promulgation of rules, NHTSA issues "Notices of Proposed Rulemaking," (NPRM) and sometimes "Advance Notices of Proposed Rulemaking," (ANPRM) published in the Federal Register. NHTSA may also publish a request for comments as to whether or not a standard needs to be modified or adopted and, if so, what it should reflect. Any person or any entity can offer comments, objections, support, research, or any other material. After an analysis of the submitted materials and its own investigation, NHTSA will then issue a decision and publish in the Federal Register a "Notice of Closing of Rulemaking", or issue an FMVSS or a revision to an FMVSS. The FMVSS 216 Standard has been under scrutiny

for many years. Only in August 2005, after years of study and consideration, did NHTSA issue a NPRM which proposes to modify some portions of this Standard.

Mr. Kam is an attorney by training who worked in NHTSA's Office of Chief Counsel for twenty-five years. Following his retirement from NHTSA, Mr. Kam founded and became the principal of "Highway Traffic Safety Associates, LLC," a one man consulting business that is operated out of his home. Plaintiff retained Mr. Kam to provide testimony related to NHTSA's regulations, and how they apply to the design and manufacture of the 1995 Lincoln Town Car at issue in this action.

Mr. Kam will not testify about any particular defect in the vehicle in question or whether the vehicle complies with any allegedly applicable Federal Motor Vehicle Safety Standard.[1] Instead, Mr. Kam will simply testify to the legal opinion that compliance with these standards does not necessarily mean that the vehicle is not defective.[2] He will further testify that these standards are only "minimal" standards, which are badly in need of updating. He is also expected to testify that the automotive industry exerts disproportionate influence on NHTSA and prevents them from engaging in badly needed upgrades to the Federal Motor Vehicle Safety Standards. (See **Exhibit "A"**, Report of Allan J. Kam).

---

[1] At issue in this action is Federal Motor Vehicle Safety Standard 216, which relates to roof crush resistance in certain motor vehicles. See 49 C.F.R. § 571.216.

[2] A copy of Mr. Kam's Report in this case is attached hereto as **Exhibit A**.

3

These opinions constitute opinions on purely legal questions and encroach on the duty of this Court as a sole interpreter of the applicable law in this case. His purported area of expertise – NHTSA statutes and regulations – is an improper subject for expert testimony because it is the Court's providence to instruct the jury in the law and the statutes and regulations about which he testifies can be easily understood by a lay person. His testimony should not be allowed, both because it lacks foundation and because the interpretation of NHTSA statutes and regulations is not a proper subject for expert testimony. See Bammerlin v. Navistar International Transportation Corp., 30 F.3d 898, 900 (7th Cir. 1994) (meaning of federal regulations regarding seat belt safety standards was not a question of fact to be resolved by the jury after a battle of experts, but rather, a question of law to be resolved by the court).

Furthermore, while he claims no technical expertise, Kam will seek to testify about the relative merits of the current FMVSS 216 Standard and the proposed changes to that Standard; that the current standard is excessively lenient; and that the scientific research disproves the automotive industry's position that FMVSS 216 is an adequate standard that meets the needs for motor vehicle safety. To the to the extent that Kam will offer opinions about, or observations concerning the appropriate level of roof strength protection in motor vehicles in general or in the subject vehicle, his testimony is inadmissible under the FEDERAL RULES OF EVIDENCE and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Kam is clearly not qualified as an automotive engineering expert, and any potential analysis or methodology he employed is necessarily flawed. In short, Kam's opinions are

not reliable and should be precluded from evidence. In addition, his opinions contain multiple instances of pure hearsay, which he is not qualified to evaluate and which should be properly excluded.

### B.     Request for Daubert Hearing.

"While Daubert hearings are not required by law or by rules of procedure, they are almost always fruitful uses of the court's time and resources in complicated cases involving multiple expert witnesses . . . ." City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 564 n.21 (11th Cir. 1998), cert. denied, 528 U.S. 812 (1999); see also Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 417 (3d Cir. 1999) ("We have long stressed the importance of *in limine* hearings under Rule 104(a) in making the reliability determination required under Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).") ("Daubert"); MANUAL FOR COMPLEX LITIGATION 3D 123-24 (Fed. Jud. Ctr. 1995) ("Pretrial rulings are also advisable with respect to proffered expert testimony that may be pivotal. The court may rule on the basis of written submission, but an evidentiary hearing under FED. R. EVID. 104(a) may be necessary to determine whether the evidence is admissible under Rules 702 and 703."). Accordingly, Ford requests that this Court conduct an *in limine* hearing to assess the admissibility of Kam's testimony and offers this Memorandum of Law as a proffer on why such a hearing is necessary.

### III.   APPLICABLE LEGAL FRAMEWORK

Expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in

issue." FED. R. EVID. 702. Before expert testimony can be admitted, the trial court must make three separate preliminary determinations: 1) That the subject matter on which the expert will offer opinion testimony is not one which would fall within the common knowledge of the average juror; 2) That the testimony will be helpful or necessary to the trier of fact in understanding and resolving the issues; and 3) That the witness possesses the requisite qualifications to provide the opinion in question. Id. Plaintiff cannot satisfy these requirements.

  **A. The Court Should Exclude Kam's Opinions.**

  **1. Kam's Opinions Provide No Assistance to the Court in Interpreting or Understanding the Applicable Statutes and Regulations.**

    **a. NHTSA Regulations.**

Plaintiff's apparent goal in hiring Kam was to find a putative "expert" mouthpiece for his legal theories. Although Kam was formerly employed by NHTSA, he does not offer opinion testimony that would be helpful to the Court in determining the issues that will be presented at trial – i.e., whether the 1995 Lincoln Town Car roof structure is defective. Moreover, such testimony should not be allowed because it lacks a foundation and the interpretation of NHTSA's statues and regulations is not a proper subject for expert testimony. Bammerlin, supra. In Bammerlin, a product liability action, plaintiffs' experts testified about their interpretation of the Federal Motor Vehicle Safety Standards. The experts also testified that the seat belt at issue was defective because it failed to comply with their interpretation of the Federal Motor Vehicle Safety Standards.

6

The defendant objected and, on appeal, the United States Court of Appeals for the Seventh Circuit reversed the district court's admission of such testimony, stating, "[T]he initial step here was one of legal interpretation. <u>What do the safety standards mean? The district judge should have resolved that question</u> and provided the jury with the proper answer, so that experts for each side could address their testimony to the governing standards." <u>Bammerlin</u>, 30 F.3d at 901.

Kam opines in this matter about the same regulations that were at issue in <u>Bammerlin</u> – the Federal Motor Vehicle Safety Standards. The regulations that Kam interprets can readily be read and understood by this Court, and no specialized knowledge is required to draw conclusions from them. Kam is merely an attorney, and there is no reason to believe that he is more of an expert than any other attorney in the reading of statutes and regulations, and there certainly is no reason to think that the Court requires his assistance in the reading of statutes and regulations. Further, much of the basis for his "interpretations" comes from media and internet reports concerning NHTSA or interviews with its personnel. Certainly, Kam is no more of an expert in interpreting the words of NHTSA Administrators than any other lawyer. (<u>See</u> **Exhibit "A"**, Report of Allan J. Kam, at p. 32-33).

In short, Kam's biased characterizations of documentary evidence will not assist the Court or the jury. Kam takes snippets from the statues and regulations, reviews media and internet reports from various sources, and expresses his subjective arguments, legal characterizations, and legal conclusions about them. This approach is exemplified in paragraphs V, VI, and VII of Kam's report. Ford requests that the applicable statutes and

7

regulations be read by the Court to understand their complete context, and that Plaintiff not be permitted to interpret these statutes for the jury through Mr. Kam's testimony.

### b. Watergate Tapes and Testimony.

Among other things, Kam seeks to testify regarding a transcript made from a tape recording of a meeting in the Oval Office of the White House on April 27, 1971, attended by President Richard M. Nixon, Presidential Domestic Affairs Advisor John D. Ehrlichman, Ford Chairman Henry Ford II, and Ford President Lee A. Iacocca; and about a number of depositions given by John Ehrlichman and David Toms (then head of NHTSA) about the conversations detailed in that transcript.[3]  Kam claims that these materials demonstrate that automotive industry, and Ford in particular, subverted the rule-making process across the board. (See **Exhibit "A"**, Kam report at pp. 22-25).  He concedes as he must, that the FMVSS 216 standard is not discussed anywhere by the parties to this meeting. (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p.147, lines 9-17, p.148, lines 8-18).

For the reasons more fully outlined in Ford's Motion *in Limine* Respecting Evidence of a Meeting Between the President of the United States and Representatives of Ford Motor Company on April 27, 1971[4], this evidence and testimony should be excluded.  In particular, it is irrelevant to each of Plaintiff's claims because it has nothing to do with the FMVSS 216

---

[3] Some of these materials apparently came from a Frontline website and were not provided at Kam's deposition. (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 146, lines 20-21, p. 147, lines 1-8).

[4] Filed separately and incorporated herein by reference.

8

standard. Thus, the Nixon meeting has nothing whatsoever to do with either the alleged roof defects Plaintiff claims exist in the 1995 Lincoln Town Car in question, or the damages stemming from the accident.

Even if the April 1971 meeting was somehow relevant and was not constitutionally protected, evidence of the meeting would be so unfairly prejudicial to Ford as to require exclusion. Discussion and evidence of the April 1971 meeting would generate unfair prejudice resulting from the inevitable and unwarranted "guilt by association" of Ford and its representatives with President Nixon and John Ehrlichman, two of the principal protagonists of the Watergate scandal. That prejudice far outweighs any minimal probative value the evidence may be found to possess. In Kuiper v. Goodyear Tire & Rubber Co., 207 Mont. 37, 673 P.2d 1208 (1983), a product liability action for allegedly defective tire rims, the plaintiff introduced evidence of Goodyear's illegal contributions to President Nixon's reelection effort and its association with those convicted of crimes in the Watergate scandal. The court held that admission of that evidence had converted the trial into a "circus" and had deprived the parties of a fair trial:

> In allowing the injection of the Goodyear political contribution, its criminal conduct in making that contribution, the Watergate scandal, and the references to the criminal participants in that scandal, the trial court allowed a relatively simple products liability case to become a political circus and denied the parties the right to a fair trial.

Id. at 53, 673 P.2d at 1217.

Here, it is clear that Plaintiff seeks to discuss the transcript of the April 1971 meeting simply because it unfairly links Ford with notorious "criminal figures," a president who

9

resigned on pain of impeachment and a presidential advisor who was convicted of several felonies and served time in prison. Moreover, President Nixon's tapes are so infamous and closely connected in the public's mind with "The Watergate Scandal" that they have taken on a life of their own as "The Watergate Tapes" with all the attendant nefarious implications. Such prejudice would be particularly unfair, and entirely unnecessary, here because other non-prejudicial evidence is available to Plaintiff. See Gross v. Black & Decker (U.S.), Inc., 695 F.2d 858, 863 (5th Cir. 1983).

### 2. Kam's Opinions About NHTSA's State of Mind are Incompetent.

Kam's opinions about NHTSA's state of mind and intentions are speculative and unreliable. He liberally sprinkles his report with conjectures about the reasons for NHTSA's actions, based entirely on his "interpretations" of letters or interviews given by NHTSA personnel. Kam does everything except come out and say that the subject vehicle is defective and unreasonably dangerous. For example, Kam opines that the Federal Motor Vehicle Safety Standards are only minimum standards; that they are not optimal standards; that compliance with the Federal Motor Vehicle Safety Standards does not mean that a vehicle is "safe"; and NHTSA has asked manufacturers to do more than merely meet the minimum "floor" required in the agency's standards. (See **Exhibit "A"**, Kam report at pp. 8-10, 14-15); (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 18, lines 8-19, p. 22, lines 5-7, p. 103, lines 11-25, p. 104, lines 1-21, p. 105, lines 1-21).

Kam then goes on to parrot a variety of selected technical criticisms made by others of the FMVSS 216 Standard: that it is unrealistic; it relies on the windshield to help support

the roof (which can be up to 30% of its strength); that it does not consider how occupants will be protected; that it does not replicate the dynamic forces of the rollover accident; and that it does not reduce deaths and injuries in rollover accidents, etc. He even goes so far as to "parrot"others' conclusions that based on such criticisms that the standard is wholly inadequate. (See **Exhibit "A"**, Kam report at pp. 16-19); (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 104, line 5 through p. 113, line 2) .

The implication is obvious – Kam is attempting to imply that the subject vehicle only met the inadequate and minimal Federal Motor Vehicle Safety Standards and is, therefore, unsafe. Kam makes this leap even though he has not seen the subject vehicle, is not qualified to offer design opinions, and has reviewed no data related to the 1995 Town Car at issue. (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 59, lines 3-21, p. 60, lines 4-20, p. 231, lines 7-14). In short, Kam is not qualified to make this leap.

To the extent that Kam is purporting to testify as a fact witness to NHTSA's intentions, he has not established that he has personal knowledge of the matters. To the contrary, Kam testifies that he was never personally involved with any of the rule making notices cited in his report, including FMVSS 216. (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 68, lines 6-17, p. 69, lines 4-16). Moreover, if he does have personal knowledge of these matters through his employment at NHTSA, he is barred from testifying to them by a Department of Transportation regulation, 49 C.F.R. Part 9. As Kam himself states, 49 C.F.R. Part 9 states, "that former NHTSA employees are not permitted to testify without authorization about matters that they personally participated in

or worked on as a department employee." (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 65, lines 17-21).

Kam even acknowledges that he is "speaking for myself, not as a representative of the agency." (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 66, lines 1-19). He is not permitted to speak for the agency; thus, Kam's opinions are nothing more than expressions of personal beliefs and subjective values – beliefs and values that are not moored to any legal standards or reliable, accepted principles.

### 3. Kam is not qualified to testify about design defects or manufacturing defects.

Kam has testified that he is not an expert in the areas of design or statistics. (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 135, lines 20-21, p. 231, lines 7-14). Nonetheless, Kam's report and testimony contains opinions that directly address technical matters.

Kam is not qualified to offer opinions that require engineering or statistical expertise. In one breath he claims he will not testify in those areas, and in the next he gratuitously offers just such technical opinions. Kam's report and deposition are littered with opinions in these areas. For example:

- The automotive manufacturer's theory on roof crush is that, in a rollover, the occupant impacts the roof milliseconds before the roof crushes. That has been debunked by the agency more than once. Materials that were placed in the agency docket provided a lot further evidence that the industry theory was not valid. (See **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 39, lines 2 - 19).

12

- FMVSS 216 is a lenient standard.  (<u>See</u> **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p.103, 2-19, p. 104, lines 5-21, p. 105, lines 1-18, p. 106, lines 2-7).

- Up to 30 percent of the windshield strength is lost when the windshield fractures.  (<u>See</u> **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 116, lines 4-16).

- FMVSS 216 tests are unrealistic and do not test the B Pillar and C Pillar structures (and for other reasons).  (<u>See</u> **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 110, lines 1-111, p. 111, lines 1-21, p. 112, lines 1-21).

While an expert can testify to the ultimate issue under FED. R. EVID. 704, he must first be qualified to do so, and the expert must have some specialized knowledge.  FED. R. EVID. 702.  Kam's opinions, with respect to these issues, set forth judgments for which Kam has no qualifications whatsoever.  Kam is an attorney.  He has no statistical, engineering, or design background.  (<u>See</u> **Exhibit "B"**, Allan J. Kam, September 13, 2005, deposition at p. 135, lines 20-21, p. 231, lines 7-14).  Further, Kam offers no foundation for his opinions, and has no personal knowledge of the issues he discusses.  The entire basis for these statements are things he read, saw on the news, or read on the internet.  Ford, therefore, requests that Kam's opinions on these be precluded from evidence.

WHEREFORE, based on the foregoing, Defendant, FORD MOTOR COMPANY, respectfully requests this Honorable Court enter an Order excluding or limiting the testimony of Kam.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 21, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Gary C. Pajcic, Esq., Pajcic & Pajcic, P.A., One Independent Drive, Suite 1900, Jacksonville, FL 32202.

          s/*M. Gary Toole*
          M. GARY TOOLE, ESQUIRE
          Florida Bar No.: 710814
          Gtoole@cabaniss.net
          JON J. HERNAN, ESQUIRE
          Florida Bar No. 658588
          Jhernana@cabaniss.net
          JOHN R. REID, JR., ESQUIRE
          Florida Bar No.  0002674
          Jreid@cabaniss.net
          CABANISS, SMITH, TOOLE & WIGGINS, PL
          485 N. Keller Road, Suite 401 (32751)
          Post Office Box 945401
          Maitland, Florida 32794-5401
          Phone: (407) 246-1800
          Facsimile: (407) 246-1895
          Attorneys for Defendant, Ford Motor Company